SECOND DIVISION

OCTOBER 6, 1998

1-97-1325

THE PEOPLE OF THE STATE OF ILLINOIS, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellee, ) COOK COUNTY

)

v. ) No. 95-27591

)

MARCEL RHODEN, ) THE HONORABLE

) DANIEL M. LOCALLO,

Defendant-Appellant. ) JUDGE PRESIDING.

JUSTICE COUSINS delivered the opinion of the court:

 

The defendant, Marcel Rhoden, was charged with multiple counts of felony murder, attempt (armed robbery), attempt (robbery), home invasion, and other offenses.  He opted for a bench trial.  At the close of the State's case, the trial court denied a defense motion for a directed finding of not guilty for attempt (armed robbery) among other charges.  The trial court granted the motion as to attempt (robbery).  At the end of the case, the trial court found the defendant guilty of home invasion, three counts of attempt armed robbery, and two counts of felony murder, 
inter alia
.  The trial court vacated the home invasion conviction together with the felony murder conviction based upon it.  The defendant was sentenced to a 35-year term for the felony murder conviction that was based on attempt (armed robbery) and to 15 years for each of the three attempt (armed robbery) convictions.  The attempt (armed robbery) prison terms were to run consecutively to the felony murder term but concurrently with each other.

The defendant contends that the trial court erred by (1) convicting him of attempt (armed robbery) and felony murder since this was inconsistent with his acquittal on attempt (robbery) charges; (2) convicting him of felony murder when the person killed was a fellow robber; (3) convicting him of multiple counts of attempt (armed robbery) when, he claims, there was only one act; (4) sentencing him for attempt (armed robbery) when that crime was a lesser included offense of the felony murder; (5) making the attempt (armed robbery) sentences consecutive to, rather than concurrent with, the felony murder sentence; and (6) not giving him credit for time served for the period that he spent in the custody of the Federal Bureau of Investigations (FBI) in another state.

BACKGROUND

On June 3, 1994, the defendant and his friend Paul Wrigley went to the condominium of James Moy.  Moy knew the defendant and Wrigley, whom he previously had hired to wash and detail his Jeep.  Wrigley and Moy had fallen out when Wrigley borrowed Moy's Jeep and returned it late.  

Moy lived with Russell Laos and Norma Sula, Laos' girlfriend.  At the time of the crime, the three residents were in the condominium along with Nelson Santiago and Santos Echevarria.  All except Nelson Santiago testified at trial.  Their testimony presents the following picture of events.

The defendant and Wrigley knocked on the door at about 6 p.m..  Laos started to unlock the door.  However, before he could finish, the defendant and Wrigley pushed the door in, breaking the bolt.  With guns drawn, they pushed Laos into the living room, where Santiago and Echevarria were.  The defendant and Wrigley demanded "Where's the money, where's the gold?"  They forced Laos and Santiago to the ground.  In attempting to force Echevarria to the ground, the defendant hit him in the back with his gun, which discharged, grazing Echevarria's back and hitting Wrigley in the leg.  As the defendant attended to his companion, Laos and Echevarria fled to other parts of the condominium.  The defendant helped Wrigley, who was bleeding profusely, out of the condominium and back into their car.

The defendant testified that at first Wrigley asked not to be taken to the hospital because there were outstanding warrants for his arrest.  He drove Wrigley to their apartment and called his girlfriend, Shava Langston.  She met the defendant and they agreed that she would take Wrigley to the emergency room at a local hospital.  She took him to the hospital, but he died that evening from internal bleeding.

Wrigley's mother, Ivy Lewis, identified the body at the morgue that night.  Later, about 2 a.m., she called the defendant and asked where her son was.  The defendant said that Wrigley had stepped out and would be back soon.  When Lewis told him that her son was in the morgue, the defendant replied: "Lord Jesus Christ, police going to lock me up."  

The defendant flew to New York the next day and then went to Jamaica in August.  He came back to the United States in January 1995 and found work in a hardware store in East Chester, New York.  

An Illinois warrant was issued for the defendant's arrest on June 6, 1994.  FBI agents arrested the defendant in New York on this warrant on July 25, 1995.  He was returned to Illinois on August 26, 1995, and was indicted on September 29, 1995.  At the close of the State's case, the court denied a defense motion for a directed acquittal for attempt (armed robbery), among other charges, but granted a directed acquittal on the charge of attempt (robbery).  The defendant was convicted of, 
inter alia
, home invasion, three counts of attempt (armed robbery), and two counts of felony murder.  

The trial court vacated the home invasion conviction and the felony murder conviction based upon it.  The defendant was sentenced to a term of 35 years' incarceration for the felony murder that was based on attempt (armed robbery) and 15 years for each of the three convictions for attempt (armed robbery).  The attempt (armed robbery) sentences were to run concurrently with each other, but consecutively to the felony murder sentence.

The defendant appeals his convictions and sentences.  He contends (1) that his felony murder conviction should be reversed on the ground that the felony murder rule does not apply when the deceased is a partner in the crime; (2) that his convictions for attempt (armed robbery) and felony murder must be reversed because they are inconsistent with his acquittal on the predicate offense of attempt (robbery); (3) that he should not have been convicted of three counts of attempt (armed robbery) since he made only one attempt;(4) that he should not have been sentenced for attempt (armed robbery) since this crime was a lesser included offense of the felony murder; (5) that the trial judge erred in making the attempt (armed robbery) sentences consecutive to, rather than concurrent with, the felony murder sentence; and (6) that the judge erred in not taking into account the time that he was in the custody of the FBI in New York when calculating his credit for time served.

We affirm in part, reverse in part, and remand the case for further proceedings.

ANALYSIS

I

The defendant argues that Wrigley's death cannot serve as the basis for a felony murder conviction because Wrigley was a cofelon.  We disagree.  Subsequent to the filing of briefs in this case the supreme court decided 
People v. Dekens
, 182 Ill. 2d 247, 695 N.E.2d 474 (1998).  In our view, 
Dekens
 is dispositive of this issue.  

In 
Dekens
, the defendant was charged with criminal drug conspiracy, attempt (armed robbery) and felony murder.  The defendant moved to dismiss the felony murder charge on the basis that the decedent was a cofelon who was shot by the intended victim of the robbery.  The trial court denied the motion to dismiss the felony murder count.  Dekens was convicted of felony murder, and this conviction was upheld by the Illinois Supreme Court.  
Dekens
, 182 Ill. 2d at 253, 695 N.E.2d at 477.

Illinois follows the "proximate cause" theory of liability for felony murder.  
People v. Lowery
, 178 Ill. 2d 462, 465, 687 N.E.2d 973 (1997).  Under this theory, one is held accountable for any death that is proximately caused by the commission of a forcible felony.  

The law in Illinois has long been that the identity of the killer is not relevant for the purposes of felony murder. 
People v. Allen
, 56 Ill. 2d 536, 309 N.E.2d 544 (1974). 
Dekens
 holds that, under the proximate cause theory of liability, the identity of the victim also is immaterial.  
Dekens
, 182 Ill. 2d at 252, 695 N.E.2d at 477.

The only distinction between 
Dekens
 and the instant case is that in 
Dekens
 the intended victim shot the decedent, whereas, in this case, the decedent's accomplice fired the shot.  But the rationale for the application of the felony murder rule in the instant case 
is even stronger than in 
Dekens
, since the person being prosecuted is the person who fired the shot.

II

Defendant next contends that his convictions for attempt (armed robbery) and felony murder must be reversed because they are inconsistent with his acquittal of the underlying offense of attempt robbery.  We disagree.

The view as to what constitutes inconsistent jury verdicts and inconsistent bench findings and what the consequences should be has been meandering and conflicting. See Annot., 
Inconsistency of Criminal Verdict with Verdict on Another Indictment or Information Tried at the Same Time
, 16 A.L.R.3d 866 (1967).  

"Our Supreme Court resolved some of these issues [regarding 

jury verdicts] in 
People v. Hairston
, 46 Ill. 2d 348, 263 

N.E.2d 840 [(1970)], when it held that the judgment entered 

on guilty verdicts on two charges of solicitation (to 

murder) would not be set aside despite the fact that the same jury found defendant not guilty of two charges each of 

murder and attempted murder arising from the same 

incidents." 
People v. Pearson
, 16 Ill. App. 3d 543, 547, 306 

N.E.2d 539 (1973), citing 
Hairston
, 46 Ill. 2d 348, 263 

N.E.2d 840 (1970).  

We note that in 
Hairston
 the court wrote: "[i]n law there is no inconsistency in verdicts of acquittal and conviction upon chargews of 
crimes composed of different elements
, but arising out of the same state of facts." (Emphasis added.) 46 Ill. 2d at 362, 263 N.E.2d at 849.

Illinois cases recognize two types of inconsistency: logical inconsistency and legal inconsistency.  Verdicts are logically inconsistent if they "acquit and convict a defendant of crimes composed of different elements, but arising out of the same set of facts." 
People v. Klingenberg
, 172 Ill. 2d 270, 274, 665 N.E.2d 1370 (1996).  Verdicts are legally inconsistent if they necessarily involve the conclusion that the same essential element or elements of each crime were found both to exist and not to exist. 
People v. Murray
, 34 Ill. App. 3d 521, 531, 340 N.E.2d 186 (1975).   

In support of his contention, the defendant cites 
People v. Pearson
, 16 Ill. App. 3d 543, 306 N.E.2d 539 (1973).  In 
Pearson
, the reviewing court conducted an in-depth analysis of trial court legally inconsistent findings and wrote:

"In order to determine whether the crimes charged 

against the instant defendant--aggravated assault and armed 

violence--are composed of the same or different elements, it is necessary to consider not only the statutory 

definitions of those crimes, but also the proof adduced by the State at this particular trial. 
The statutory elements 

of armed violence, of which defendant was found not 

guilty, are that defendant performed 'an act prohibited by 

[section 12-2 (aggravated assault)]' ' while armed with a 

dangerous weapon.' (Ill. Rev. Stat. 1971, ch. 38, par. 33a- 2.) The elements of aggravated assault include the elements 

of assault, Ill. Rev. Stat. 1971, ch. 38. par. 12--1, plus 

one of the ten factors of aggravation--in this case the use 

of a deadly weapon ***.  The elements of assault as 

pertinent to this case are that the defendant '[1] without 

lawful authority' '[2] engages in conduct [3] which places 

another in reasonable apprehension of receiving a battery,' 
 i.e.
, 'bodily harm.'" 
Pearson
, 16 Ill. App. 3d at 547-48, 

306 N.E.2d at 542.

In 
Pearson
 the court further wrote: 

"On the evidence presented to the trier of fact, there 

is no possible factual basis for proving that defendant 

placed another in reasonable apprehension of receiving a 

battery other than the testimony that defendant had a gun in his possession.***

 *** 
The elements of aggravated assault and armed 

violence are identical, and the proof that would suffice to convict for one offense, being precisely the same, would 

equally support conviction of the other.  The findings 

of not guilty of armed violence and guilty of aggravated assault are therefore 'legally inconsistent,' and the convictions may not stand.
" (Emphasis added.) 
Pearson
, 16 Ill. App. 3d at 548, 306 N.E.2d at 543. 

Notably, the charges in 
Pearson
, armed violence and aggravated battery, involved identical elements.  Thus, the findings of not guilty of aggravated assault were legally inconsistent 
in toto
.

But 
Pearson
 is dissimilar from the case 
sub judice
 in that  attempt (armed robbery) and attempt (robbery) in the instant case do not involve all of the same identical elements.  Attempt (robbery) contains one less element and is therefore the lesser included offense of attempt (armed robbery). 720 ILCS 5/2--9 (West 1994).  Moreover, because the facts are undisputed in the instant case that the offender had in his possession a gun at all times during the commission of the attempt (robbery), no trial judge could enter judgment against the defendant for the offense of attempt (robbery).  
People v. Donaldson
, 91 Ill. 2d 164, 435 N.E.2d 477 (1982) (When a defendant is found guilty of two crimes, one of which is a lesser included offense of the other, the court must enter judgment and sentence only on the more serious offense).  Moreover, had the instant case been tried before a jury and the same evidence adduced, the trial judge could have refused to allow the jury to even consider the offense of attempt (robbery). 
People v. Teague
, 108 Ill. App. 3d 891, 906, 439 N.E.2d 1066 (1982) ("where the evidence shows the accused is either guilty of the higher offense or not guilty of any offense, an instruction on the lower offense is unnecessary and properly refused").

In the instant case, the defendant, in addition to citing 
Pearson
, 16 Ill. App. 3d 543, 306 N.E.2d 539, also cites 
People v. Klingenberg
, 172 Ill. 2d 270, 665 N.E.2d 1370 (1996), to support the argument that acquitting a defendant of a predicate offense is legally inconsistent with finding the defendant guilty of the compound offense and requires that the conviction of the compound offense be reversed. 
Klingenberg
, 172 Ill. 2d at 275, 665 N.E.2d at 1376.  The State responds with the contention that 
Klingenberg
 involved a jury trial, while the instant case involves a bench trial.  The State further argues that the holding in 
Klingenberg
 that legally inconsistent jury verdicts cannot stand is predicated on the premise that legally inconsistent verdicts are unreliable because they show confusion or misunderstanding, whereas it cannot be inferred that the trial judge in the instant case was confused about the proof required to convict for attempt (armed robbery) and attempt (robbery).

In 
Klingenberg
 a school superintendent was charged with theft and official misconduct.  The jury convicted him of the latter but acquitted him of the former.  Since a verdict convicting a defendant of a compound offense but acquitting him of the predicate offense is legally inconsistent (
People v. Frias
, 99 Ill. 2d 193, 457 N.E.2d 1233 (1983)), the court in 
Klingenberg
 held that reversal of the conviction was proper. 
Klingenberg
, 172 Ill. 2d at 282, 665 N.E.2d at 1376.

In this case, as in 
Klingenberg
, the defendant has been convicted of a compound offense, attempt (armed robbery), and acquitted of a predicate offense, attempt (robbery).  Under the facts of this case, these findings are legally inconsistent.  The question that confronts us is whether 
Klingenberg
 has 
per se
 applicability in bench trials. 

The State argues that  
Klingenberg
 does not have 
per se
 applicability in bench trials.  The State cites 
People v. O'Malley
, 108 Ill. App. 3d 823, 439 N.E.2d 998 (1982).  The State further argues that the record in the instant case indicates a rational basis for the trial court's act and, therefore, defendant's conviction for felony murder and attempt (armed robbery) must be affirmed notwithstanding defendant's acquittal of the lesser included offense of attempt (robbery).  See 
O'Malley
, 108 Ill. App. 3d at 833, 439 N.E.2d at 1004.   

In 
O'Malley
, the only difference between the elements of the two crimes was that official misconduct required that the person committing assault and battery be a public employee acting in his official capacity.  It was uncontroverted and the evidence established that the defendant was a public employee on the job. In 
O'Malley
, after a bench trial a Cook County forest preserve ranger was convicted of assault and battery and acquitted of official misconduct.  The defendant appealed his conviction on the grounds of legally inconsistent verdicts. 
O'Malley
, 108 Ill. App. 3d at 833, 439 N.E.2d at 1004.

 We believe that the vice of inconsistency is that it implies confusion on the part of the trial judge sitting as the finder of fact.  See 
O'Malley
, 108 Ill. App. 3d at 831, 439 N.E.2d at 1004.  
O'Malley
 rejected defendant's argument that his conviction must be reversed because of the inconsistent findings by the trial judge. 
O'Malley
, 108 Ill. App. 3d at 833, 439 N.E.2d at 1004.  
O'Malley
, in affirming the inconsistent findings by the trial judge, enunciated the following rationale:

"Legal inconsistency in the finding should not, on a 
per se
 

basis, require reversal of the conviction.  Inconsistency 

is only one element to consider in determining the existence of proof beyond a reasonable doubt.  When, as in the present case, there is a rational explanation for the inconsistent 

finding other than confusion, the inconsistency will not 

contribute to a determination that defendant was not proved 

guilty beyond a reasonable doubt.  Trial judges can assist 

appellate review by explaining their findings on the 

record." 
O'Malley
, 108 Ill. App. 3d at 833, 439 N.E.2d at 1004.

In 
Klingenberg
, the court based its holding on the case of 
People v. Frias
, 99 Ill. 2d 193, 457 N.E.2d 1233 (1983).  
Frias
 held that legally inconsistent jury verdicts could not stand, due to principles of collateral estoppel.  While the 
Klingenberg
 court adopted the 
Frias
 holding, it disavowed the collateral estoppel rationale, since later supreme court cases had established that collateral estoppel properly only applies where there are two proceedings. 
Klingenberg
, 172 Ill. 2d at 281, 665 N.E.2d at 1376.  The 
Klingenberg
 court's substitute rationale was that legally inconsistent verdicts "suggest confusion or misunderstanding on the part of the jury." 
Klingenberg
, 172 Ill. 2d at 281, 665 N.E.2d at 1376.

We note that in 
Frias
 the court cited the United States Supreme Court case of 
Ashe v. Swenson
, 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970).  We further note that in 
Ashe
 the Court stated that "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." 
Ashe
, 397 U.S. at 444, 25 L. Ed. 2d at 475, 90 S. Ct. at 1194.  Similarly, we believe that the rule of legal inconsistency in criminal cases is not to be applied with the hypertechnical and archaic approach of a nineteenth century pleading book, but with realism and rationality.

In our view, while legally inconsistent findings in a criminal trial may, on occasion, indicate confusion on the part of the trial judge, there is not the same compelling reason to apply a 
per se
 rule in the context of a bench trial as there is in the context of a jury trial.  This is so because a court reviewing a jury verdict generally lacks a sufficient basis to determine if the jury was confused.  However, a reviewing court, by examining the trial record, may often ascertain whether a judge sitting as finder of fact was confused in making his or her disposition of a charge or charges.  Moreover, in a bench trial, the trial judge is presumed to know the law. 
People v. Buchanan
, 211 Ill. App. 3d 305, 322, 570 N.E.2d 344 (1991).  

Accordingly, for the foregoing reasons, we hold that in a bench trial, if there is a rational basis for the court's judgment, and an examination of the record as a whole indicates that there was not confusion, legally inconsistent findings by a trial judge may stand. 
O'Malley
, 108 Ill. App. 3d at 833, 439 N.E.2d at 1004.  In the instant case, the trial court's acquittal on the attempt (robbery) charge was consistent with the trial court's recognition that, on the facts of the case, the defendant was either guilty of the larger offense or not guilty.

The defendant additionally argues that it was premature for the judge, in essence, to find that the defendant had a gun.  We agree that a directed finding before the defendant rests is premature and error.  The preferred procedure would have been for the trial court to have denied the motion for directed findings on both attempt (robbery) and attempt (armed robbery), and then, at the end of the case, to have merged the attempt (robbery) conviction into the attempt (armed robbery) conviction.  However, we hold that such error was harmless in this case.

Since we conclude that the legally inconsistent findings in the instant case were not the result of confusion as to whether the defendant has been proven guilty of all of the elements of attempt (armed robbery) and felony murder, we agree with the State that legally inconsistent findings do not mandate reversal of the convictions of attempt (armed robbery) and felony murder.

III

Defendant next contends that two of his three attempt (armed robbery) sentences must be overturned, since he has been sentenced more than once for precisely the same act, in violation of the "one-act-one-crime" rule set forth in the following passage from
 People v. King
, 66 Ill. 2d. 551, 363 N.E.2d 838 (1977):

 

"Prejudice results to the defendant only in those 

instances where more than one offense is carved from the 

same physical act.  Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included 

offenses.  Multiple convictions and concurrent sentences 

should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of 

those acts.  'Act,' when used in this sense, is intended to 

mean any overt or outward manifestation which will support a different offense." 
King
, 66 Ill. 2d. at 566, 363 N.E.2d at 

844.

In 
People v. Rodriguez
, 169 Ill. 2d 183, 186, 661 N.E.2d 305 (1996), the court distilled the 
King
 holding into a two-part test:  First the court should look to see if the multiple offenses are predicated on precisely the same physical act.  If so, then multiple sentences are not proper.  If the crimes are based on more than one physical act, the court must then determine whether any of the offenses is a lesser included offense of another.  If so, then multiple sentences are not proper.

The State concedes that three sentences are not warranted, but argues that two should be upheld, because the defendant's use of force against Echevarria and his threat of force against the other men constituted two acts for the purposes of the 
King
 rule.  We agree on this issue.  The defendant's battery upon Echevarria and his threats to the others were two outward manifestations which would support different offenses.  Nevertheless, on this issue, as the State concedes, one of the convictions for attempt (armed robbery) should be vacated under 
King
.

Even so, the defendant further contends that the attempt (armed robbery) convictions must be vacated as lesser included offenses of the felony murder count.  We agree.  In 
People v. Washington
, 272 Ill. App. 3d 913, 651 N.E.2d 625 (1995), we held that "in the case of felony murder, the underlying felony is a lesser included offense because the felony is established by proof of the same or less than all of the facts required to establish the offense of the felony murder." 
Washington
, 272 Ill. App. 3d at 919, 651 N.E.2d at 630.  In 
People v. Prince
, 288 Ill. App. 3d 265, 278, 681 N.E.2d 521 (1997), moreover, we specifically held that attempt (armed robbery) was a lesser included offense of a felony murder count that was predicated on the attempt (armed robbery). 

The State argues in response that under the charging instrument approach adopted in 
People v. Novak
, 163 Ill. 2d 93, 643 N.E.2d 762 (1994), in order for one crime to be a lesser included offense of another, its elements must be described in the charging instrument of the greater.  The State urges that merely naming the offense is not enough, citing a passage in 
Novak
: "The 'lesser offense must have a broad foundation in the instrument charging the greater,' or at least 'set out the main outline of the lesser offense.'" 
Novak
, 163 Ill. 2d at 107, 643 N.E.2d at 770.  This language quoted in 
Novak
 is from 
People v. Bryant
, 113 Ill. 2d 497, 505, 499 N.E.2d 413 (1986).  Significantly, 
Bryant
 goes on to say in the very same paragraph that the fact "that the indictment did not expressly allege all the elements of the lesser offense is not, in our view, fatal under these circumstances," noting prior cases where "the lesser offense, theft, was simply named in the charging instruments, and, taken with the evidence introduced at the defendants' trials, *** was found sufficient to warrant instructions on the lesser offenses." 
Bryant
, 113 Ill. 2d at 505, 499 N.E.2d at 417.  Consequently, in our view, the court in 
Novak
 did not hold that it was necessary for the instrument charging a greater offense to describe, as opposed to name, the lesser offense.

The State did not specify which count of attempt (armed robbery) was the predicate for the charge of felony murder.  Additionally, under the charging instrument approach, attempt (armed robbery) is a lesser included offense of felony murder.  Therefore, the defendant's convictions and sentences for attempt (armed robbery) must be vacated.  
People v. Smith
, No. 84047, slip op. at 5-6 (October 1, 1998), citing 
King
, 66 Ill. 2d 551; 
Rodgriguez
, 169 Ill. 2d at 186.

IV

Next, defendant contends that his sentences for attempt (armed robbery) should run concurrently to, rather than consecutively with, his sentence for felony murder.  As we have held that all three convictions of attempt (armed robbery) must be vacated, it is not necessary for us to examine the issue.  

V

Finally, we turn to defendant's contention that the trial court erred in not taking into account the time that he was in custody in New York in determining credit for time served.  The State argues that the defendant has waived this issue because he did not raise it at trial or in a postsentencing motion.  The State correctly observes that a defendant should make any challenges to the correctness of a sentence or a sentencing hearing by written motion within 30 days of the sentence.  
People v. Reed
, 177 Ill. 2d 389, 393-94, 686 N.E.2d 584 (1997).  

Nevertheless, under Supreme Court Rule 615, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a).  Since the "right to be lawfully sentenced is a substantial right," "impermissible or illegal sentences may be attacked on appeal as plainly erroneous even though no post-

sentencing motion was filed." 
People v. Whitney
, 297 Ill. App. 3d 965, 967, 697 N.E.2d 815, 817 (1998); see 
People v. Washington
, 297 Ill. App. 3d 790, 796-97, 697 N.E.2d 1241, 1246 (1998).  We hold that the issue has not been waived in this case.

In our view, the proper date from which to calculate the credit for time served is the date on which the defendant waived extradition.  
People v. Gardner
, 172 Ill. App. 3d 763, 768, 527 N.E.2d 155 (1988).  But since, as the State notes, "the record does not reflect whether or when defendant waived extradition," we remand for the purpose of determining the proper sentencing credit.

For the reasons set forth, we affirm the defendant's conviction for felony murder; we vacate the defendant's convictions and sentences for attempt (armed robbery); and we remand for the determination of proper credit for time served.

Affirmed in part and reversed in part; cause remanded with directions.

RAKOWSKI and McNULTY, JJ., concur.